Case 2:09-cv-01321-JEM   Document 22   Filed 09/07/10   Page 1 of 12   Page ID #:56

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CYNTHIA GRIFFIN,<br><br>    Plaintiff,<br><br>  v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>    Defendant. | Case No. CV 09-1321-JEM<br><br>MEMORANDUM OPINION AND ORDER AFFIRMING DECISION OF THE COMMISSIONER OF SOCIAL SECURITY |

**PROCEEDINGS**

On March 4, 2009, Cynthia Griffin ("Plaintiff" or "Claimant") filed a complaint seeking review of the decision by the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for Supplemental Security Income ("SSI") benefits. The Commissioner filed an Answer on June 9, 2009. On September 23, 2009, the parties filed a Joint Stipulation ("JS"). The matter is now ready for decision.

Pursuant to 28 U.S.C. § 636(c), both parties consented to proceed before the Magistrate Judge. After reviewing the pleadings, transcripts, and administrative record ("AR"), the Court concludes that the Commissioner's decision should be affirmed.

**BACKGROUND**

Plaintiff is a 54 year old female who was found to have the medically determinable severe impairments of mild right-side carpal tunnel syndrome and obesity. (AR 476.) Plaintiff has not engaged in substantial gainful activity since October 15, 2003, the alleged onset date. (Id.)

Plaintiff's claim for SSI benefits was denied initially on April 16, 2004, and on reconsideration on July 2, 2004. (AR 21, 34, 39.) She filed a timely request for a hearing, which was held before Administrative Law Judge ("ALJ") Eric V. Benham on February 23, 2005, in Long Beach, California. (AR 197-240.)

The ALJ issued an unfavorable decision on February 25, 2005. (AR 10-13.) Plaintiff filed a timely Request for Review of Hearing Decision and the Appeals Council denied review on May 4, 2005. (AR 3-5.)

On July 11, 2005, Plaintiff filed an appeal in the United States District Court for the Central District of California, Case No. CV 05-4816-JWJ. On September 30, 2006, the District Court remanded the case to the Commissioner. (AR 258-279.) On November 18, 2006, the Appeals Council remanded the case to the ALJ. (AR 280-282.)

On May 16, 2007, a supplemental hearing was held before ALJ Alexander Weir III. (AR 419-469.) On July 9, 2007, the ALJ issued an unfavorable decision. (AR 241-256.) Plaintiff filed another appeal in the Central District, Case No. CV 07-5969-JWJ. Thereafter, the parties stipulated to a voluntary remand pursuant to sentence four, 42 U.S.C. § 405(g). (AR 490-492.) The parties agreed that, upon remand, "[t]he ALJ will evaluate the relevant treating and examining source opinions, including the opinion evidence provided by . . . Nathan E. Lavid, M.D.," as well as other medical opinions. (AR 491.)

Following remand, a hearing was held on September 4, 2008, in Los Angeles, California, before ALJ David Agatstein. (AR 566-591.) Plaintiff appeared and testified at the hearing. (AR 569-574.) Medical experts Steven B. Gerber, M.D., and Glen A.E. Griffin, Ph.D., and vocational expert ("VE") Heidi Paul also appeared and testified. (AR 575-590.)

On December 1, 2008, the ALJ issued an unfavorable decision. (AR 470-486.) Thereafter, Plaintiff commenced the present action.

**DISPUTED ISSUES**

As reflected in the Joint Stipulation, the disputed issues that Plaintiff raises as grounds for reversal are as follows:

1. Whether the ALJ properly considered the opinion of the consultative examiner, Dr. Lavid?

2. Whether the ALJ complied with the District Court's remand order to evaluate the relevant opinion evidence of Dr. Lavid?

3. Whether the ALJ properly held that Plaintiff was capable of performing the jobs of investigator (dealer accounts) and school bus monitor?

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "'more than a mere scintilla'. . . but less than a preponderance." Saelee v. Chater, 94 F.3d 520, 521-22 (9th Cir. 1996) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (internal quotations and citation omitted).

This Court must review the record as a whole and consider adverse as well as supporting evidence. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006). Where evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld. Morgan v. Comm'r, 169 F.3d 595, 599 (9th Cir. 1999). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Robbins, 466 F.3d at 882 (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)); see also Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007).

**SEQUENTIAL EVALUATION**

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or . . . can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner has established a five-step sequential process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920.

The first step is to determine whether the claimant is presently engaging in substantially gainful activity. Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). If the claimant is engaging in substantially gainful activity, disability benefits will be denied. Bowen v. Yuckert, 482 U.S. 137, 140 (1987). Second, the ALJ must determine whether the claimant has a severe impairment or combination of impairments. Parra, 481 F.3d at 746. Third, the ALJ must determine whether the impairment is listed, or equivalent to an impairment listed, in Appendix I of the regulations. Id. If the impediment meets or equals one of the listed impairments, the claimant is presumptively disabled. Bowen, 482 U.S. at 141. Fourth, the ALJ must determine whether the impairment prevents the claimant from doing past relevant work. Pinto v. Massanari, 249 F.3d 840, 844-45 (9th Cir. 2001). Before making the step four determination, the ALJ first must determine the claimant's residual functional capacity ("RFC").[1] 20 C.F.R. § 416.920(e). The RFC must consider all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96-8p. If the claimant cannot perform his or her past relevant work or has no past relevant work, the ALJ proceeds to the fifth step and must determine whether the impairment prevents the claimant from performing any other substantial gainful activity. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000).

---

[1] Residual functional capacity ("RFC") is what one "can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

The claimant bears the burden of proving steps one through four, consistent with the general rule that at all times the burden is on the claimant to establish his or her entitlement to benefits. Parra, 481 F.3d at 746. Once this prima facie case is established by the claimant, the burden shifts to the Commissioner to show that the claimant may perform other gainful activity. Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006). To support a finding that a claimant is not disabled at step five, the Commissioner must provide evidence demonstrating that other work exists in significant numbers in the national economy that the claimant an do, given the RFC, age, education, and work experience. 20 CFR § 416.912(g). If the Commissioner cannot meet this burden, then the claimant is disabled and entitled to benefits. Id.

**DISCUSSION**

**A.    The ALJ Properly Considered Dr. Lavid's Opinion**

On remand, the ALJ was directed specifically to consider the opinion of Dr. Nathan E. Lavid, M.D., as well as other medical opinions. (AR 473.) Dr. Lavid performed a Complete Psychiatric Evaluation on June 6, 2007, and diagnosed Plaintiff as having a prior history of polysubstance dependence with a depressive disorder. (AR 401-02.) Dr. Lavid assessed Plaintiff with a Global Assessment of Functioning ("GAF") Score of 66.[2] In the "Functional Assessment" portion of his report, Dr. Lavid noted that Plaintiff's mental status examination revealed no cognitive deficits, perceptual disturbances or delusional disorders. (AR 401.) Dr. Lavid also stated that "[Plaintiff] is able to focus attention adequately. She is able to follow 1- and 2-part instructions. She can adequately remember and complete simple tasks." (AR 402.) Dr. Lavid did not specify in this portion of his report that Plaintiff was unable to follow more complex instructions or was otherwise limited in her ability to work due to her mental impairments. Dr. Lavid also stated that Plaintiff "does have the ability to tolerate the

---

[2] A GAF score of 61 to 70 indicates "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." *Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 2000) at 34 (emphasis in original).

stress inherent in the work environment, maintain regular attendance, and work without supervision." (Id.) On the Medical Source Statement of Work Related Activities (Mental) portion of his report, Dr. Lavid concluded that Plaintiff had no functional limitations. (AR 405-407.) Specifically, Dr. Lavid found that Plaintiff's "ability to understand, remember, and carry out instructions" and "ability to respond appropriately to supervision, co-workers, and work pressures in a work setting" were not affected by her mental impairments. (AR 405, 406.)

In the decision, the ALJ discussed Dr. Lavid's consultative psychiatric examination in some detail. (AR 481.) The ALJ stated: "Dr. Lavid reached diagnoses of polysubstance dependence, abstinent times 20 months, and depressive disorder NOS." (Id.) Although the ALJ did not reference specifically that portion of Dr. Lavid's report regarding Plaintiff's ability to follow 1- and 2-part instructions or adequately remember and complete simple tasks, he did reference specifically the Medical Source Statement and Dr. Lavid's ultimate conclusion that Plaintiff "was not limited in the ability to understand, remember and carry out instructions or to respond appropriately to supervision, co-workers and work pressures in a work setting." (AR 481.) The ALJ also recited Dr. Lavid's findings that, *inter alia*: Plaintiff complained of depression, anxiety, and difficulty sleeping; Plaintiff had reported feeling sad; she had a full range of affect; she recalled 3 out of 3 items after 5 minutes; and she was able to concentrate throughout the evaluation. (Id.)

The ALJ also considered the hearing testimony of the medical expert, Dr. Griffin. (AR 483.) The ALJ summarized the pertinent part of Dr. Griffin's testimony as follows: "The medical evidence indicates that the claimant has a history of substance dependence and dysthymia.[3] . . . As for her functional capacity, she has mild limitation on social functioning. This would amount to a 10% reduction on the ability to interact with supervisors, co-workers, and the general public." (Id.)

---

[3] "Dysthymia is a chronic type of depression in which a person's moods are regularly low. However, it is not as extreme as other types of depression." U.S. National Library of Medicine and National Institutes of Health, MedlinePlus Medical Encyclopedia, http://www.nlm.nih.gov/medlineplus/ency/article/000918.htm.

Having reviewed all of the medical records and testimony, the ALJ ultimately concluded the following regarding Plaintiff's mental impairments:

> The record also reflects that the claimant has mild limitations on social functioning due to her mental impairments. The treating records in the file reflect that she has complained of depression or anxiety/panic symptoms at times. However, she has not required emergency treatment or hospitalization for her mental symptoms. During the consultative psychiatric evaluation on June 6, 2007, she demonstrated good memory and she was able to concentrate. Dr. Lavid assessed no mental limitations . . . . While this assessment is not unreasonable, the [ALJ] will give the claimant the benefit of the doubt and find that she is mildly limited in social functioning, based on her dysthymia and history of polysubstance dependence.

(AR 484.) Thus, the ALJ adopted Dr. Griffin's RFC assessment that Plaintiff had mild mental limitations, rather than Dr. Lavid's assessment that she had none.

Plaintiff argues that that, in reaching his RFC assessment that Plaintiff is mildly limited in social functioning, the ALJ effectively rejected Dr. Lavid's statements regarding Plaintiff's ability to follow 1- and 2-part instructions and remember and complete simple tasks. Plaintiff further argues that the ALJ's failure to provide specific and legitimate reasons for allegedly rejecting these statements by Dr. Lavid constituted legal error. (JS 4.) Plaintiff's arguments are without merit.

The record is clear that the ALJ reviewed and considered Dr. Lavid's opinion, including his ultimate conclusion that Plaintiff's mental impairments did not impact her ability to work. (AR 399-403, 405-407, 481.) The ALJ "need not discuss *all* evidence presented" to him. Vincent on Behalf of Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ only must explain why "significant probative evidence has been rejected." Id. (internal quotations and citation omitted). The only portion of Dr. Lavid's opinion that the ALJ actually rejected was the conclusion that Plaintiff had no functional limitations. (AR 484.) Rather, the ALJ adopted the more favorable

assessment of Dr. Griffin, who found mild limitations on social functioning. (AR 483, 484.) Dr. Griffin's opinion was supported by and consistent with other evidence in the record, including Dr. Lavid's opinion regarding Plaintiff's depressive disorder and other medical records indicating that Plaintiff was being treated for mild depression. Thus, Dr. Griffin's opinion constituted substantial evidence and it was not erroneous for the ALJ to adopt it. See Morgan v. Comm'r. of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999) (non-treating medical expert's testimony may constitute substantial evidence when supported by other evidence in the record and consistent with it).

The ALJ's duty to develop the record further was not triggered in the circumstances of this case. It is the claimant's duty to prove he is disabled. Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001); see also 42 U.S.C. § 423(d)(5)(A) (the claimant must furnish medical and other evidence of her disability); 20 C.F.R. § 404.1512(c) ("You must provide medical evidence showing that you have impairment(s) and how severe it is during the time you say you are disabled."). "The ALJ . . . has an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered." Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (citations and internal quotations omitted). However, "[a]n ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." Mayes, 276 F.3d at 459-60.

Here, at best, Plaintiff could argue that there was an ambiguity between Dr. Lavid's statements that Plaintiff "is able to follow 1- and 2-part instructions" and "can adequately remember and complete simple tasks" (AR 402), and Dr. Lavid's ultimate conclusion that Plaintiff's "ability to understand, remember, and carry out instructions" is not "affected by the impairment." (AR 405.) The ALJ, however, did not find that the record was ambiguous or inadequate. Nor did any medical professional render an opinion that the record was ambiguous or inadequate. Cf. Tonapetyan, 242 F.3d at 1150 (duty to develop record existed when ALJ relied on physician who expressed that more medical evidence was needed to

state a diagnostic opinion). To the contrary, Dr. Griffin stated that "there are no significant discrepancies in this record." (AR 585.) To the extent that Plaintiff disagreed, she had the opportunity at the hearing, through her counsel, to question Dr. Griffin regarding any limitations in Plaintiff's ability to follow instructions or remember and complete tasks, but counsel declined to ask any questions. (AR 586.) In these circumstances, there was no ambiguity or inadequacy in the record, and the ALJ had no duty to develop the record further. See Mayes, 276 F.3d at 459-60. Even if there were some ambiguities, the ALJ was entitled to consider the record completely and resolve conflicts in the medical testimony and ambiguities in the record. Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995); Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989).

      The ALJ's interpretation of the evidence, and his ultimate RFC assessment that Plaintiff was mildly limited in her social functioning but has no other mental limitations, is supported by substantial evidence in the record. In formulating his opinion, the ALJ cited the record extensively, relying on several different medical opinions regarding Plaintiff's alleged mental impairments, including Dr. Lavid's conclusion that Plaintiff did not have any limitations in her ability to follow instructions or remember and complete tasks due to her impairments, and Dr. Griffin's conclusion that Plaintiff has mild limitations on social functioning. (AR 481, 483, 484.) Even if the evidence was susceptible to more than one rational interpretation, the ALJ's decision must be upheld. Magallanes, 881 F.2d at 750. Moreover, even if the ALJ erred in evaluating Dr. Lavid's findings, such error was harmless because the ALJ's decision was supported by substantial evidence, including Dr. Griffin's testimony and the medical record as a whole. See, e.g., Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1197 (9th Cir. 2004) (ALJ's error harmless in light of substantial evidence supporting conclusions); Curry v. Sullivan, 925 F.2d 1127, 1131 (9th Cir. 1990) (finding ALJ error harmless because it did not affect the result).

**B.     The ALJ Complied With the District Court's
        Remand Order to Evaluate Dr. Lavid's Opinion**

The parties stipulated that the ALJ would "evaluate the relevant treating and examining source opinions" of Dr. Lavid and other medical professionals.  (AR 491.) Subsequently, the District Court issued the Order of Remand consistent with the terms of the voluntary remand.  (AR 494.)  Plaintiff contends that, although "the ALJ put forth the appearance of complying with the District Court's remand order," it fell short "by ignoring without explanation relevant portions of Dr. Lavid's psychiatric evaluation," specifically, Dr. Lavid's statement that Plaintiff "is able to follow 1- and 2-part instructions" and "can adequately remember and complete simple tasks."  (JS 7.)  Plaintiff argues that "any doubts the ALJ may have had regarding Dr. Lavid's assessment of Plaintiff's ability to follow instructions, remember and complete tasks could have been resolved if the ALJ had re-contacted Dr. Lavid for additional evidence or further clarification."  (JS 8.)  By failing to do so, Plaintiff concludes, the ALJ "disregarded the District Court's Order of Remand to evaluate relevant and treating examining source opinions."  (Id.)

Plaintiff's argument is without merit.  The ALJ did not express any "doubts" regarding Dr. Lavid's report.  As set forth more fully above, there was no ambiguity that triggered the ALJ's duty to develop the record further.  Moreover, it is clear that the ALJ reviewed, considered, and accepted Dr. Lavid's psychiatric evaluation of Plaintiff, including Dr. Lavid's conclusion that Plaintiff's mental impairments did not limit her ability "to understand, remember, and carry out instructions."  (AR 405-407, 481, 484.)  See Magallanes, 881 F.2d at 755 (reviewing court may draw inferences from ALJ's decision; ALJ not required to recite "magic words").  There is no indication that the ALJ rejected probative evidence, and no further discussion or explanation was needed.  See Vincent, 739 F.2d at 1394-95 (ALJ only required to explain why probative evidence has been rejected).  The ALJ reviewed and considered Dr. Lavid's opinion, along with Dr. Griffin's opinion and the other medical evidence, and ultimately concluded that Plaintiff had the ability to perform the unskilled work identified by the vocational expert.  (AR 485, 587-591.)  The ALJ properly considered the medical opinions and complied with the remand order.

**C. The ALJ Properly Concluded That Plaintiff Was Capable of Performing the Jobs of Investigator (Dealer Accounts) and School Bus Monitor**

Plaintiff argues that the ALJ improperly relied upon the opinion of the VE in determining that Plaintiff is able to perform the jobs of investigator (dealer accounts) and school bus monitor. (JS 10; AR 485-86.) Plaintiff's argument again is premised on the assumption that the ALJ improperly ignored or rejected Dr. Lavid's statement that Plaintiff could perform 1- or 2-step instructions and complete simple tasks, and that the ALJ's RFC assessment was erroneous.

The ALJ found that Plaintiff had the RFC to "lift and carry up to 20 pounds occasionally and 10 pounds frequently; stand, walk, and sit for about 6 hours in an 8-hour workday; cannot work around hazards; cannot engage in constant manipulation with the right upper extremity; is limited to occasional handling, fingering, feeling, pushing and pulling with the right hand; and has a mild limitation on social functioning, which entails a 10% reduction on the ability to interact with supervisors, co-workers, and the general public." (AR 483.) Again, the Court has concluded that this RFC assessment is supported by substantial evidence and free of legal error.

Because the ALJ did not err in his RFC assessment that Plaintiff only had mild limitations on her social functioning and did not assess limitations based on Plaintiff's ability to follow instructions or complete tasks, the ALJ also did not err in adopting the VE's assessment and concluding that Plaintiff could perform the jobs of investigator (dealer accounts) or school bus monitor. The hypothetical posed to the VE was appropriate and properly reflected the ALJ's RFC assessment, the VE applied the ALJ's RFC assessment properly, and both jobs identified by the VE comport with Plaintiff's noted limitations.[4]

---

[4] Plaintiff cites to Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001), and Light v. Social Sec. Admin., 119 F.3d 789, 793 (9th Cir. 1997), to support her claim that the ALJ erred in finding that Plaintiff could perform the jobs of investigator (dealer accounts) and school bus monitor. Both Pinto and Light involved a discrepancy between the claimant's noted limitations and the DOT job description. Here, there is no such discrepancy. Rather, the VE simply applied the ALJ's RFC assessment of Plaintiff's limitations directly to the DOT
(continued...)

11

**ORDER**

IT IS HEREBY ORDERED that the Decision of the Commissioner of Social Security is AFFIRMED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: September 7, 2010  /s/ John E. McDermott
JOHN E. MCDERMOTT
UNITED STATES MAGISTRATE JUDGE

---

[4] (...continued)
job descriptions. Plaintiff's actual contention is that the ALJ's RFC assessment was incorrect. The Court already has rejected this contention, and Plaintiff's further arguments regarding discrepancies between the "correct" RFC assessment and the DOT job descriptions are without merit.